UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SUZANNE FAHMY,

                                                                                           05 CV 9479

                        Plaintiff,

                                                                                          COMPLAINT

   -against-

DUANE READE, INC.; DUANE READE
INTERNATIONAL, INC.; ANTHONY CUTI;
AND JAMES RIZZO,

                        Defendants.
-----------------------------------------------------------x

## COUNT ONE

1.      Plaintiff, SUZANNE FAHMY, by her attorney, ANDREW J. SCHATKIN, complains of Defendants, DUANE READE, INC.; DUANE READE INTERNATIONAL, INC.; ANTHONY CUTI AND JAMES RIZZO that they violated certain civil rights guaranteed to the plaintiff through the purposeful harassment and ultimate termination of plaintiff's employment.  Defendant Duane Reade, Inc. and Duane Reade International, Inc. is liable because of its policy and custom of encouraging, tolerating, permitting, and ratifying a pattern of illegal harassment and discrimination directed against the plaintiff due to her National Origin i.e. Hispanic resulting in her ultimate termination and that Defendants, Duane Reade, Inc. and Duane Reade International, Inc. knew and ratified this pattern of harassment or should have known of it.

## JURISDICTION

2.  (A)  This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 USC Sec. 2000(e) to 2000e-17 (as amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub.L.No. 102-166) providing for redressing the deprivation of rights secured to Plaintiff by the Civil Rights Act of 1964 (race, color, religion, or national origin).  This action seeks compensatory and punitive damages by reason of this unlawful discriminatory termination.

  (A)  This action is also brought alleging and arguing retaliation against the plaintiff Suzanne Fahmy pursuant to Section 704(a) of the Civil Rights Act of 1964, as amended providing for protection against retaliation for opposing illegal discriminatory practices and for participating in the enforcement process.

  (B)  The pendent jurisdiction of the Court is invoked pursuant to 28 USC Sec. 1367 wherein a tort claim is set forth for the Intentional Infliction of Mental Distress.

  (C) The claim of a violation of the plaintiff's First Amendment rights is also set forth here.

This Court's jurisdiction is invoked pursuant to 42 USC Sec. 2000(e) 5 (f) (3); the pendent jurisdiction of the Court under 28 USC Sec. 1367 and the United States Constitution.

## PARTIES

3. The plaintiff Suzanne Fahmy was at all times relevant to this action a citizen of the United States and a resident of Queens County, Woodside, New York City.

4. Duane Reade, Inc. and Duane Reade International, Inc. was at all times relevant a Delaware Corporation with headquarters at 440 9th Ave. New York, NY 10001.

5. Duane Reade, Inc. and Duane Reade International, Inc. is a company and the largest drug store chain in New York City with approximately 6,000 employees and 240 stores.

6. James Rizzo was at all times relevant a managerial employee of Duane Reade, Inc. and Duane Reade International, Inc.

7. Anthony Cuti was at all times relevant the CEO of Duane Reade, Inc. and Duane Reade International, Inc and was an Executive.

## BACKGROUND

8. The plaintiff Suzanne Fahmy was hired by the Defendant Duane Reade, Inc. and Duane Reade International, Inc. along with her husband, Emad Fahmy, in October of 1998 and was hired as a manager in training. Beginning approximately September 2001 to the date of her termination, the plaintiff Suzanne Fahmy was continuously harassed by reason of her national origin and was retaliated against for her husband, Emad Fahmy's discrimination suit and website posted against the company.

9. In September of 2001 Ms. Fahmy discovered that Mr. Fred Citarella was hired at a substantially higher salary than she had been making as Recruiting Manager.  Ms. Fahmy went to her Supervisor at the time, Seymour Stein, and complained that hiring someone from the outside was not fair, since this was already a job that the plaintiff had been doing and that it should have been offered to her.  Seymour Stein stated that Duane Reade's decision was final.  In March of 2002 the plaintiff was moved from the Human Resources location at 505 8th Ave. and given the Benefits Manager position with an increase to $60,000.  The plaintiff was then moved out of the Human Resources office to the headquarters office at 440 9th Ave. to perform the duties as Benefits Manager where she was responsible for handling all employee medical benefits, as well as many other areas.

10. In early 2003 the plaintiff asked James Rizzo, the Vice President of Human Resources, about becoming a Director for Benefits.  The plaintiff was told that she should go back to college to get a degree to improve her knowledge in this respect and the plaintiff took Mr. Rizzo's advice and began taking courses for her degree in Human Resources.  The plaintiff notes that at the time she inquired about the position there were three Directors in the department and only one of the three had any kind of Human Resource education.

11. The plaintiff remained in this position until July of 2003 until her husband, Emad Fahmy, filed a EEOC complaint for discrimination, retaliation, and

equal pay. The plaintiff was then called into Mr. Rizzo's office in July of 2003 and was asked if she knew about her husband filing a complaint. The plaintiff responded to Mr. Rizzo that she did know, but that it was Emad's right to do so. Mr. Rizzo, acting in anger, then immediately removed the plaintiff from the Benefits Manager position and moved her into the Office Manager position. There she was responsible for office ordering and maintenance and even had to help clean up one of the floors that Duane Reade leased, but that was used for storage. The plaintiff was also put in charge of a construction project on another site that required her to move heavy items. Mr. Rizzo told the plaintiff that her husband's case had the makings of a Class Action lawsuit and that Emad should know that no one wins these cases. The plaintiff was then moved to a corner cubicle and put under constant surveillance. Patty Elenski, the office manager, trained the plaintiff and oversaw her work, but this was supposed to be temporary until she received her promotion. Even after she was promoted James Rizzo allowed Ms. Elenski to monitor the plaintiff's work. Ms. Elenski harassed the plaintiff and the plaintiff complained to Mr. Rizzo to no avail.

12. James Rizzo refused to give the plaintiff an office, even though the previous Office Manager had an office, and gave her former office to a Recruiting Consultant, who was only in the office once or twice a month, who had been in the cubicle previously. Anytime, the plaintiff avers, an

opportunity came up for an office an excuse was made up to keep the plaintiff in the corner cube.

13. The defendant James Rizzo made many excuses that were no more than ploys to keep the plaintiff in the cubicle leaving her with no privacy and no where to conduct meetings with staff or vendors.  The plaintiff was basically an Office Manager without an office.  Although there were conference rooms that could have been used for meetings, they were fully occupied, which occurred frequently, and the plaintiff would have to sit in her cube with the vendor sitting in the aisle in front of her cube.  This was very unprofessional and highly embarrassing to the plaintiff.

14. When staff was cut in January of 2004 the plaintiff had to help out in the mailroom and, in May 2004, when the Mailroom Supervisor was terminated, the plaintiff was forced to work in the mailroom for a very long period of time.  In the middle of 2004 the plaintiff was given a construction project where moving heavy items was required of her.

15. In early October of 2004, through constantly lifting heavy items in the course of her work, the plaintiff tore a tendon in her right forearm and had to start physical therapy and wear a special brace to support the tendon.  Thereafter, toward the end of October 2004, the plaintiff began to experience numbness and tingling in her right pinky and ring fingers and began to loose her grip on items and frequently drop things.

16. When the plaintiff went to the doctor she was informed she had a condition called Cubital Tunnel Syndrome and an operation was

scheduled for the week of November 1, 2004.  The plaintiff informed her supervisor, and let him know she did not know exactly how long she would be out of work, but would know after the operation.  Two weeks after the operation the stitches were taken out of the plaintiff's arm, but she could not move her arm and could not lift anything and was having difficulty with her range of motion.  The doctor put a return date of January 2005 for her return to work and during this time the plaintiff made arrangements that the work would be done, but when she did inform Mr. Rizzo how long the doctor wanted to keep her out he became very upset.  The plaintiff explained to Mr. Rizzo about the arrangements she had set up with the Mailroom Supervisor, Archie Quiles, so that he could be trained and would order the basic office supplies, and would be able to call her, and she in turn, would call the specific vendors and order whatever they needed, and that he would pay the bills.  Mr. Rizzo said that he did not want the Mailroom Supervisor to take care of the bills, and that the bills should go through him instead.  The plaintiff informed the Mailroom Supervisor of Mr. Rizzo's decision and later on the basic supply ordering was even taken away from the Mailroom Supervisor, although he was handling it properly.

17. During this time the plaintiff was going to physical therapy to complete the healing process and she returned to work on December 21, 2004. When the plaintiff spoke to Mr. Rizzo he said that it was selfish and irresponsible of the plaintiff to have the operation so quickly and that she

should have thought about the company first before making the decision. The plaintiff explained to Mr. Rizzo that this was an emergency and that it was something that had to be taken care of immediately. Mr. Rizzo responded that she should have thought about the company first.

18. All of these aforesaid actions show and demonstrate a pattern of harassment and disparate treatment including, but not limited to, removing the plaintiff from her Benefits Manager position; demoting the plaintiff to the position of Office Manager; reducing the plaintiff's staff; reducing her budget; refusing to provide the plaintiff an office to work in; and overly scrutinizing the plaintiff during her work hours. The plaintiff avers that similarly situated non-Hispanic managers and employees were not treated in this fashion and, moreover, they were not treated like the plaintiff who had an association with her husband Emad Fahmy who brought a Title VII discrimination lawsuit against the company and who opposed the discrimination committed by Duane Reade, Inc. and Duane Reade International, Inc. on a constant and patterned basis.

19. One day toward the middle or end of January of 2005 the plaintiff received a call, on her personal cell phone, while she was at the reception desk with an employee by the name of Natasha Waiters. This reception area was part of the responsibility of the plaintiff as Office Manager. The plaintiff's husband, in this conversation, gave her the name of the website he had just created and asked her to go on her lunch time to an Internet service and check out the site to see what it looked like. The plaintiff

wrote it down on a piece of paper and when she got off the phone with her husband Ms. Waiters asked her what the website was and the plaintiff told Ms. Waiters that it was a website that Emad made and she asked if she could look at it too, since she already knew that Emad had a lawsuit against the company and she also knew Emad personally. The plaintiff gave her the name of the website.

20. On February 8, 2005 James Rizzo called the plaintiff into his office at 3:15 p.m. and told her she was terminated. He stated that she had an obligation to tell him about the website and then gave the plaintiff a termination letter that was prepared before the meeting. Present in the office with Mr. Rizzo was Michelle Bergman, the Vice President and Corporate Counsel, and a Loss Prevention Manager by the name of Bill Chalavoutis. The plaintiff told Mr. Rizzo, when he fired her, that she did not create this site, but she was intimidated by the entire situation and could not complete her explanation of what had happened. The plaintiff told James Rizzo that it was her husband's right to publicly discuss this case. The plaintiff explained to Mr. Rizzo again that she did not create this website, that her husband was the one who created it and that it was his constitutional right to discuss his lawsuit and the discrimination charges against the company.

21. After the meeting, the plaintiff was escorted by Mr. Chalavoutis through the office downstairs to her desk, in front of employees, and he then stood by the desk while the plaintiff gathered her belongings. The plaintiff asked for something to put the rest of her belongings in and she was told

they would be mailed to her and she was escorted out of the office area. When the plaintiff finally received her personal items the majority of the items were damaged and no longer usable and care was not taken in packing the items that were shipped and they were jammed in a box, without any packing material and shipped.

22. In addition, around the middle of October 2004, at a meeting with James Rizzo and Anthony Cuti and several other employees, when Mr. Cuti saw the plaintiff at the meeting he grabbed James Rizzo and asked, "What the hell was she [the plaintiff] doing at the meeting after her husband had filed a case against the company". James Rizzo told Anthony Cuti what she was doing at the meeting and Anthony Cuti made the statement in a loud enough tone for most of the employees around her to hear and the situation was embarrassing and humiliating in the extreme.

23. As a result of this harassment based on discrimination of the plaintiff's Hispanic background and her opposing the discrimination set forth in her husband Emad Fahmy's case, the plaintiff has suffered great and grievous emotional harm and hurt. The plaintiff was attacked by reason of her National Origin on a continuous basis; selected for disparate treatment based on her National Origin; and discriminated against by reason of her opposing the discrimination publicized by her husband, Emad Fahmy, in his lawsuit against the company and his website.

24. Despite having twice gone to a hearing on the issue of the plaintiff's Unemployment Benefits, the Administrative Law Judge there found no

10

misconduct on the part of the plaintiff.  At the Unemployment Hearing Duane Reade brought a witness that made untrue statements under oath and false allegations against the plaintiff, Suzanne Fahmy.  In addition, Duane Reade filed an appeal after this hearing with the Unemployment Board of Appeals and the Board of Appeals found there was no misconduct on the part of Ms. Fahmy and found that Duane Reade was in violation of Ms. Fahmy's rights by wrongfully terminating her, which finding was the same finding that the previous Administrative Law Judge had found on two separate occasions prior to this.

**FIRST CLAIM AGAINST DUANE READE, INC.**

**AND DUANE READE INTERNATIONAL, INC.**

25. Paragraphs 1-24 are incorporated herein by reference.

26. Defendants Duane Reade, Inc. and Duane Reade International, Inc., acting by and through its managerial employees Anthony Cuti and James Rizzo, did unlawfully and illegally discriminate against the plaintiff by reason of her National Origin, i.e. Hispanic, all in violation of 42 USC Sec. 2000(e). Said individual defendants did discriminate and acted with discriminatory intent within the policies and customs of Duane Reade, Inc. and Duane Reade International, Inc. terminating the plaintiff from her position by reason of her National Origin i.e. Hispanic and treating her in a disparate fashion as opposed to other non-Hispanic employees.

**SECOND CLAIM AGAINST DUANE READE, INC.,**

## DUANE READE INTERNATIONAL, INC.; ANTHONY CUTI; AND JAMES RIZZO

27. Paragraphs 1-26 are incorporated herein by reference.

28. Defendant Duane Reade, Inc. and Duane Reade International, Inc., acting by and through its managerial employees Anthony Cuti and James Rizzo, did retaliate against the plaintiff by reason of her husband Emad Fahmy's lawsuit and his website of averring discrimination on the part of Duane Reade, Inc. and Duane Reade International, Inc. resulting in her unlawful and illegal discriminatory termination.

## THIRD CLAIM AGAINST ALL DEFENDANTS

29. Paragraphs 1-28 are incorporated herein by reference.

30. By reason of this illegal and unlawful termination the plaintiff's First Amendment rights to free expression and free speech were violated since she was terminated for her husband expressing his free opinion on the Internet that Duane Reade, Inc. and Duane Reade International, Inc. acted in a discriminatory fashion with respect to its hiring and promotion of its managers and employees.

## FOURTH CLAIM AGAINST ALL DEFENDANTS

31. Paragraphs 1-31 are incorporated herein by reference.

32. Plaintiff did and continues to suffer as a result of all the defendants' actions severe emotional distress by reason of the extreme and outrageous actions and conduct of the defendants including depression, sleeplessness, and anxiety all to her great emotional detriment and harm.

**WHEREFORE,** plaintiff SUZANNE FAHMY requests that this Court:

(a) Award compensatory damages against defendants, each of them, jointly and severally, in the amount of $5,00,000.

(b) Award punitive damages against the defendants jointly and severally in the amount of $4,000,000.

(c) Award cost of action, including attorney's fees, to plaintiff, and

(d) Award such other and further relief as this Court may deem appropriate.

(e) Award full back pay, including vacation and personal days.

(f) Award the plaintiff reinstatement to her former position.

A jury trial is demanded.

Dated: Jericho, NY
 October 31, 2005

        LAW OFFICES OF
        ANDREW J. SCHATKIN
        350 Jericho Turnpike
        Jericho, NY 11753

        _____
        Andrew J. Schatkin